**Elmer R. CAIN, Respondent,**

v.

**ORSCHELN BROS. TRUCK LINES, INC.,**
**Employer-Appellant,**

and

**Royal Indemnity Company, Insurer-Appellant.**

**No. 25244.**

Kansas City Court of Appeals,
Missouri.

Feb. 2, 1970.

Gary C. Clifton, Liberty, Robert E. Stewart, Kansas City, for appellants.

Harold J. Maddox, Kansas City, for respondent.

SHANGLER, Presiding Judge.

The issue presented by this appeal is whether the finding of the Industrial Commission that claimant suffered an "accident" within the meaning of the Workmen's Compensation Law is supported by competent and substantial evidence. Appellants, employer and insurer, contend it is not because claimant's evidence on that issue is "conflicting and self-destructive". They argue as well that, as this evidence includes two disparate versions of the event giving rise to claimant's injury, one of which does not constitute an accident for which the employer could be deemed liable, it is not sufficient to support the award.

The trial referee, in the first instance, found that respondent Elmer R. Cain, employee of appellant Orscheln Bros. Truck Lines, Inc., had suffered a permanent injury to his back as a result of accident.

He rated the resultant disability at ten per cent of the body as a whole and, additionally, made an allowance for the value of necessary medical aid not furnished by the employer or insurer. The Industrial Commission increased the amount given for necessary medical aid, and as modified, an award for claimant for $2,264.83 was affirmed. The employer and insurer appealed to the circuit court which affirmed the Industrial Commission's final award.

The Industrial Commission found claimant Cain had suffered an "accident" within the meaning of Section 287.020(2) of the Workmen's Compensation Law. We are therefore required to view the evidence, including all legitimate inferences, in that light most favorable to that finding and the award based upon it. If that finding is supported by substantial and competent evidence and is not contrary to the overwhelming weight of the evidence, the award must stand. Wilhite v. Hurd, Mo., 411 S. W.2d 72, 77.

Respondent Cain's evidence consisted of his own testimony and that of Dr. F. L. Feierabend, his examining and rating physician. Appellants presented no witnesses. Their evidence consisted of two impeaching exhibits, a Report of Injury which had been executed in claimant's hand, and a written narrative of the occurrence taken of claimant at the appellants' instance and signed by claimant.

Respondent Cain testified that he was employed by appellant Orscheln as a route driver. His regular duties required him to load his truck preparatory to making deliveries. On May 15, 1967, the day of the alleged accident, he had placed a four-wheeled cart loaded with boxes of plastic, each weighing about 65 pounds, onto the bed of his truck. He had already stacked other cartons upon the floor of the truck in rows some three feet high, but one "slot", an opening, remained in the top row. He intended to complete that row by placing a box of plastic in it. With body somewhat bent "in a kind of awkward position", and arms extended, he lifted the box from the cart, attempted to place it in the opening, but as the box would not fit into it, his movement and that of the box were unexpectedly and suddenly arrested. The box "bounced" back, jerking him and snapping his back audibly. He immediately felt pain in his mid-back at the belt line. He described the resultant movement of his body variously as "it twisted me back", "it kind of pushes me back" and "it jerked me". He fell to the floor—" * * * my knees went out, I dropped down", "it just floored me". After an interval of rest, and having ministered to his comfort, he drove to his first stop. He was then in such pain that he telephoned his dispatcher, told him of his back injury, and asked to be relieved. It eventually came, and he went home. The next morning, he could not readily get out of bed, but with much effort managed to call his employer who referred him to Dr. John Meyers for treatment. He was taken to St. Mary's Hospital where he remained for nine days.

Doctor Feierabend, respondent's physician, diagnosed claimant's injury as a lumbosacral strain. In response to claimant's hypothetical question which assumed as true the essential facts of the testimony we have related, Doctor Feierabend gave his opinion, based on a reasonable medical certainty, that claimant's injury was caused by the event described. He rated claimant's permanent disability at between 10 per cent and 15 per cent of the body as a whole.

If we understand appellants aright, they do not challenge that this testimony considered in itself, and if believed, establishes an "accident" within the meaning of the statute. They do contend that the evidentiary effect of their exhibits 1 and 2, as well as that of a statement of history given by claimant to Doctor Feierabend's nurse, is such as to completely nullify the probative effect of claimant's evidence.

On May 16, 1967, the day following the occurrence, in compliance with a rule of employment, respondent completed and

signed a Report of Injury form. It was received in evidence as appellant's Exhibit 1. In his own hand, respondent supplied this narrative in paragraph 23 of the form: "I was loading D27. I picked up a box of plastic when I sit it down my back snaped and hurt just after minutes then about 2 or 3 hours later, it hurt real bad."

On May 24, 1967, while claimant was in the therapy room of the hospital, a statement was taken from him by a representative of the appellants. He signed it and it was received in evidence as their Exhibit 2. It contained this account:

"I picked up a box of Dupont Plastics off of the cart and when I bent over to set it on the floor, I had a sharp pain in the lower part of my back near the left hip area. I could even hear my back make a noise and my knees gave way. The box I had lifted was not as heavy as things I usually work with and I would say that it weighed about 65 lbs. at the most. I didn't twist or fall but the pain hit and after a few minutes I went on and loaded my truck and started on my route."

On June 22, 1967, claimant described to Doctor Feierabend's nurse the manner in which he was injured. This history, which was incorporated into the doctor's report, disclosed: "On May 15, 1967, I was loading a trailer. I set a box down and my back popped and snapped and my knees buckled."

Appellants argue that the three versions of the event of May 15, 1967 given by the respondent in the Report of Injury, by signed statement to appellants' hireling, and to Doctor Feierabend's nurse are so contradictory and antithetical in substance and meaning to his testimonial account of that event as to make them "self-destructive" on the issue of accident. They go further. They argue that this impeaching testimony is "the only competent evidence in the record" as to how claimant was injured, and there was therefore no evidentiary basis for the Commission's award. (We shall overlook the solecism involved in at once depicting the several items of evidence as "self-destructive", yet some surviving as "the only competent evidence in the record".)

Appellants expressly invoke the rule that contradictory testimony of a single witness relied on to prove an issue does not constitute substantial evidence of that issue in the absence of an explanation or other circumstances tending to show which version is true. Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647; Welborn v. Southern Equipment Company, Mo., 395 S.W.2d 119, 126. This principle can have no application in this case simply because the testimony of respondent did not conflict with itself on the issue of accident, the only area of contest. Appellants point to no testimony of respondent which contradicts itself, and we make none out.

What appellants actually argue, and in arguing, assume, is that the three extrajudicial statements made by respondent and his testimonial version of the occurrence culminating in his injury are somehow conflicting. Once again, they fail to point out in which respects they conflict. If we must speculate concerning it, when compared with each other, the three statements are to the common effect that on May 15, 1967, claimant was loading a trailer and, in the process of placing a box down, his back snapped and his knees buckled. If we search out differences between those statements and the testimonial account, we would say that in none of the statements was there any mention of a "slot" too small to accommodate the box, nor of the sudden arrest of the movement of the box and claimant's body. Also, whereas Exhibit 2, the written statement taken for appellants, contained claimant's words, "I didn't twist or fall", his testimony was: "it twisted me back", "it just floored me". These accounts of falling and twisting, however, related to non-material facts and do not bear on the essential issue of accident, so that even if contradictory, they do not have the effect of impairing the essential proof otherwise made by claimant in order to

establish a compensable accident. Sita v. Falstaff Brewing Corporation, Mo.App., 425 S.W.2d 487, 489. This is so because since the Supreme Court decided Crow v. Missouri Implement Tractor Company, Mo., 307 S.W.2d 401, 405, it has been held that an "unusual or abnormal strain" (as was found by the Commission to have been suffered by respondent Cain) is a compensable accident, even though not accompanied or preceded by a slip, fall, or the application of external force. Finally, in his testimony, as well as in both written statements, but not in the one given the nurse, claimant described pain as having attended, or having soon followed, the attempted placement of the box.

■■ In any event, whether any words or conduct of claimant were in fact inconsistencies, is not to be determined by the isolated words or phrases used by him in his out of court statements, but "by the *whole impression or effect* of what has been said or done". Wigmore on Evidence, (3d Ed.), Vol. III, p. 725. Moreover, "some *real inconsistency* must appear '*prima facie*' before evidence of alleged inconsistent statements or conduct becomes competent", State ex rel. State Highway Commission of Missouri v. Fenix, Mo.App., 311 S.W.2d 61, 64. It thus became a matter of claimant's credibility, since his prior statements, while admissible for impeachment, did not destroy the prima facie probative effect of his testimony given under oath. Miller v. Multiplex Faucet Company, Mo., 315 S.W.2d 224, 227; Wood v. Ezell, Mo.App., 342 S.W.2d 503, 506. Furthermore, the testimony of the claimant, if believed, constituted substantial evidence of the fact that an accident occurred, even though he was the only witness to the accident and notwithstanding inconsistencies between the testimony given and prior statements made by him. Powers v. Universal Atlas Cement Company, Mo. App., 261 S.W.2d 512, 519; Tuller v. Railway Exp. Agency, Mo.App., 235 S.W.2d 404, 406.

■■ It is the function of the Industrial Commission to pass on the credibility of the witnesses and the weight to be given the evidence. Sita v. Falstaff Brewing Corporation, supra. Having done so, the Commission found that:

"(Claimant) suffered an unusual or abnormal strain when the box he was attempting to place in position unexpectedly failed to fit in the area remaining in that particular row in his truck. We find that this abnormal and excessive strain was the competent producing cause of the injury to the claimant."

This finding of accidental injury falls within the rule of Crow v. Missouri Implement Tractor Co., supra, most recently reaffirmed in Davies v. Carter Carburetor, Div. ACF Industries, Inc., Mo., 429 S.W. 2d 738, 745. While it would be unavailing to review many of the cases which have found unusual and abnormal strains, in Luketich v. Krey Packing Company, Mo. App., 413 S.W.2d 29, the postural attitude of the injured employee and the manner in which the injury occurred were sufficiently analogous to those in our case as to be persuasive as a precedent. That employee was attempting to place a hindquarter of beef from a rail onto a cutting table in one continuous movement, but because of the placement of a waste cart nearby, his movement had to come to a sudden stop before its intended completion. In doing so, his back was injured. The court concluded, at p. 35: "It was this sudden stop that created the abnormal stress". In our case, when the box "unexpectedly failed to fit", its movement and that of claimant both stopped suddenly, creating the stress which injured claimant. See also, Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292, 298. It is of no moment that claimant "was in a customary position doing his work in a routine manner" (as found by the Commission) at the time he was injured. "(T)he *unexpected* and *abnormal* strain is the important event. This

will *usually* result from the doing of the work in an 'abnormal manner' or in doing work that is not routine, but it is not necessarily so." Brotherton v. International Shoe Company, Mo.App., 360 S.W.2d 108, 114. We conclude that the finding of the Industrial Commission that claimant "suffered an unusual or abnormal strain" was supported by competent and substantial evidence.

This brings us to appellants' second point. They argue that, since Doctor Feierabend admitted upon cross-examination that claimant's injury could have been caused by the incident described in his own hand in the Report of Injury (Exhibit 1) and in the history given by him to the nurse and, since neither account described a compensable accident, claimant was not entitled to an award. Their trend of argument continues: "We, therefore, have a situation where the Respondent's doctor testified that the Respondent's injury and disability could have resulted from the accident to which the Respondent testified at the trial of this case, or it could have resulted from the incidents described by the Respondent which did not amount to a compensable accident". They rely on the principle announced in certain cases, among them Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548, 554, that where an injury results from one of two causes, for one of which, but not the other, the employer would be liable, the recovery of compensation is not authorized. That abstract rule is generally applied in determining whether the claimant has met his burden of proof as to causation of injury, not as to the existence of an accident. Welker v. M.F.A. Central Cooperative, Mo.App., 380 S.W.2d 481, 487; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 63;

Sita v. Falstaff Brewing Corporation, *supra*, 425 S.W.2d p. 490.

■ Appellants' argument, in any event, is not demonstrably valid. It is premised on the assumption, made on eight separate instances in their brief, that the versions of the occurrence contained in Exhibits 1 and 2 and in the account given the nurse do not describe a compensable accident. Once again, we are left to speculate as to what is meant, as neither analysis of these versions nor authority to support this assumption is offered. There can be no doubt, and even appellants do not suggest otherwise, that all the descriptions of the occurrence, whether extra-judicial or testimonial, relate to but one "incident". Which version was worthy of belief, if indeed more than one version was presented, was peculiarly within the province of the Industrial Commission to decide. Its award was fully supported and authorized.

■ Finally, respondent requests us, in the eventuality of the affirmance of the judgment of the circuit court, to award damages in the amount equivalent to ten per cent of the judgment with lawful interest from the date of rendition of the award, as authorized by Supreme Court Rule 83.13(d), V.A.M.R., 1959. We decline to do so. Although the award of the Industrial Commission was supported by competent and substantial evidence, from our review of the evidence and the questions presented, the issue of accident was fairly debatable. In such circumstances, the provisions of the rule cited are not applicable.

The judgment of the circuit court is affirmed.

All concur.