**Albert B. DIECKMANN, Sr., Plaintiff-Appellant,**

v.

**James M. MARSHALL, Defendant-Respondent.**

No. 33547.

St. Louis Court of Appeals, Missouri.

July 28, 1970.

Shaw, Hanks & Bornschein, L. L. Bornschein, Clayton, for plaintiff-appellant.

Schaper & Woods, Philip Schaper, Jr., Bowling Green, for defendant-respondent.

WOLFE, Presiding Judge.

This is an action in replevin wherein the plaintiff seeks to recover some tools which he alleges that he left in the custody of James M. Marshall, a deputy sheriff. He sought judgment for recovery of the tools and if delivery of the tools could not be had, then in the alternative he asked for a judgment for the value of the tools which he alleged to be $3,500. There was a directed verdict for the defendant at the close of plaintiff's case and the plaintiff appeals.

The petition listed a number of tools, from screwdrivers to assorted wrenches and some carpenter tools. It alleged that these were left with the defendant and that their value was $3,500. The defendant answering stated that two boxes of tools

were left with him to be retained until the plaintiff was released from the penitentiary or until satisfactory disposition could be made of them. He further alleged that on the 8th day of March, 1965, the tools were delivered to Edith Ragan at the request and on behalf of the plaintiff.

The single issue before us on this appeal is whether or not the plaintiff's evidence made a submissible case.

The plaintiff was the only witness to testify and in order to make clear the reason for the confused evidence, and only for that purpose, we set forth the facts developed as they related to his personal history.

The plaintiff lived in a house owned by Edith Ragan. He moved there in 1963 and was to repair the place which was in a rundown condition. This work was considered as his rent. He took all of his tools there. In January of 1964 he was arrested for drunken driving. Edith Ragan posted a $1,000 bond for his release. On July 8 he entered a plea of guilty to the charge and was sentenced to four years in the penitentiary.

After being sentenced he was taken to the "old jail" and there he said, "What am I going to do about my tools?" He had some long extension ladders and heavy tools at a place belonging to Bob Metts where he had been building a bathroom. His small carpenter tools were locked in the back of Bob Metts' car. Marshall, the defendant, called a man named Ellis who ran a junk yard and owned a wrecker truck and Ellis picked up all of the big tools and took them to Edith Ragan's place and from there some boxes of mechanic's tools were taken to the jail. They could not get the carpenter tools because Bob Metts was not at home to unlock his car.

Plaintiff's daughters were at the jail and according to plaintiff offered to take the boxes home and put them under beds. Marshall, the defendant, told plaintiff he could leave the tools in the old jail if he wanted to and they would be safe there. That was what was done.

Plaintiff testified that he was then taken to the penitentiary and served twenty-six months of his sentence. Upon his release he returned to Bowling Green and went to the sheriff's office and asked for his watch which he had left with the defendant and he was given the watch. He asked for his tools and was told by Marshall, the defendant, that they had been delivered to Edith Ragan. He said that he went to her house and she told him that she did not have them and that the sheriff had not brought them to her house. This suit followed.

The plaintiff offered and there was received in evidence a list of tools said to have been in the boxes, with the stated value after various items. The exhibit was never filed here so our only information as to what it contains comes from the testimony of the witness regarding the value of the items listed and what they consisted of. He stated that he listed the tools from memory and put prices after some and told his lawyers to put prices after the other items to bring it up to $3,500. He said that he figured that he could have made that much out of his tools and that he valued the situation at $3,500.

Some of the tools he bought as far back as 1939. He had put them up as security for a bond premium once in Palmyra where he had been arrested for drunken driving. Some were stolen then but he bought new ones. He had given tools in payment of money that he owed, and some tools had been taken by another person. The evidence is a mass of confused statements by the plaintiff. He had been an alcoholic for many years and jailed for offenses arising out of drunkenness on so many occasions that he could not remember how many times he had been in jail. He had been sent twice before to the penitentiary on two prior convictions and to the State Hospital at Fulton on several occasions. Understandably his answers were confused and rambling but although he was repeatedly asked the fair and reasonable

value of the tools, he repeatedly stated that he did not know their value at the time of trial or at any other time.

He testified that he had never authorized the defendant to deliver the tools to Edith Ragan. He received a letter from the defendant while he was in the penitentiary, dated November 18, 1964, in which the defendant stated: "Dear Ben: Enclosed you will find Southwestern Bell Telephone Company check number ME1298J in the amount of $3.97 on your telephone bill with papers attached to it. As for your tools I have some of them and Edith has the rest."

At the conclusion of the plaintiff's testimony the defendant moved for a directed verdict, and as stated the court directed the verdict for the defendant. The granting of a directed verdict at the close of a plaintiff's case should only be done when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against the plaintiff that there is no room for reasonable minds to differ. McCarthy v. Wulff, Mo., 452 S.W.2d 164, l.c. 168[3].

Replevin is primarily a possessory action and the property is the subject of it. The gist of the action is plaintiff's right to immediate possession. If the plaintiff shows absolute ownership then he should prevail in the absence of a valid defense. Dugan v. Trout, Mo.App., 271 S.W.2d 593, l.c. 600; Rankin v. Wyatt, 335 Mo. 628, 73 S. W.2d 764, l.c. 767.

■ The plaintiff's evidence was that he placed in the defendant's custody some of his tools. This was in fact admitted by the defendant's answer. No question was raised as to the plaintiff's ownership of the tools or his right to possession. He therefore made a case in replevin.

■ As to the amount of damages to which the plaintiff would be entitled upon failure of the defendant to deliver the tools the plaintiff's proof fails. However, even though there is a failure of proof on this

the plaintiff would still be entitled to nominal damages. American Alliance Ins. Co. v. Mead, Mo.App., 242 S.W. 1005; Robertson v. Snider, Mo.App., 86 S.W.2d 966.

 There is a probability that a jury would give little credence to the plaintiff's testimony but that goes to the credibility of the witness and is a matter for the trier of facts, in this case the jury. McCrary v. Ogden, Mo., 267 S.W.2d 670; Sita v. Falstaff Brewing Corporation, Mo.App., 425 S.W.2d 487.

For the foregoing reasons we hold that the court erred in directing a verdict for the defendant at the close of the plaintiff's case and the judgment is reversed and the cause remanded for a new trial.

BRADY and DOWD, JJ., concur.