Duane **HINDERLITER**, Employee, Plaintiff-Respondent,

v.

**WILSON BROTHERS**, Employer, and Transamerica Insurance Company (Group), Insurer, Defendants-Appellants.

No. 3250I.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 21, 1967.

Application to Transfer Denied April 10, 1967.

Luke, Cunliff, Wilson, Herr & Chavaux, Sweet, Schwarz & McGhee, Robert R. Schwarz, St. Louis, for defendants-appellants.

Harry J. Nichols, St. Louis, for plaintiff-respondent.

TOWNSEND, Commissioner.

Respondent's claim for benefits under the Workmen's Compensation Act was rejected by the Referee. Upon review by the Industrial Commission the award of the Referee was affirmed by a divided vote of that tribunal, upon the stated ground that the claimant did not sustain an accident within the meaning of the act. Respondent appealed to the Circuit Court of St. Louis County where the decision of the Industrial Commission was reversed and the case remanded for further proceedings. Employer and insurer have appealed to this Court.

The claimant was employed as a collector of trash and garbage for appellants Wilson Brothers. He was the only witness testifying as to the circumstances of his injury. The award of the Referee recites:

" * * * I find that the employee testified that his job was putting garbage and trash from residences into a large tub and carrying the tub to the garbage truck to be emptied. He had to do this many times a day and this was the only job that he had to do. The weight of the tub to be carried to the garbage truck would vary depending upon the amount and the kind of garbage which he had put into the tub. The tub was awkward to lift and difficult to balance and had to be swung from the ground up to the employee's left shoulder. On the occasion of his injury he stated that this was a heavy load, 75 to 100 pounds, and that he had difficulty in balancing it. I find that on the occasion in question the employee's lifting the tub did not constitute an accident since it was essentially the same job which he did all day long. It should be noted the employee himself testified that on the one occasion when he hurt his back, he was lifting as he always did lift the tub and that the only thing different from this incident [sic] is that he felt a pain in his back."

On the issue of whether there was an "accident" within the meaning of the statute, claimant's entire case was made to rest upon the theory of abnormal strain. His argument advanced in the Application for Review and in his brief before the Commission points up and emphasizes those portions of his testimony which, according to his contentions, support the proposition that his injury resulted from an abnormal strain. Thus, he directed the attention of the Commission specifically to the variation in weight and contents from tub to tub, to the shifting of the material within the tub in the course of the lift, to the tilt of the tub, to the spilling of a small portion of the contents, to the twist of the employee in raising the tub—all matters set out in the transcript.

The Commission made these findings:

"We further find from all of the evidence that the employee's feet did not slip, that he did not fall, nor was he thrown off balance while lifting the tub of garbage referred to in the evidence; that he was not subjected to an unusual or abnormal strain or exertion; that no

unforseen event occurred (other than the commencement of pain in employee's back); and we conclude that he did not sustain an accident within the meaning of the Missouri Workmen's Compensation Law as alleged."

Judicial review of an award of the Industrial Commission is limited by Section 287.490, RSMo 1959, V.A.M.S., in this manner: "Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law * * *." Here the Commission has found that claimant was not subjected to an unusual or abnormal strain. Claimant has failed to convince the trier of fact of the existence of that fact upon which his claim was made to rest. The finding negates the whole basis of the claim.

In the face of the finding of no abnormal strain and the statutory command that the Commission's findings of fact shall be conclusive, claimant's brief in this court is in large part directed to the same considerations of the testimony as were urged upon the Commission in the endeavor to persuade that body that an abnormal strain had occurred.

■ Upon appeal from an award of the Commission, the appellate court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: * * * (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award." (Section 287.-490, RSMo 1959, V.A.M.S.).* Here the Circuit Court had before it the award of the Commission that claimant did not sustain an accident, a conclusion of law. Obviously, the facts found by the Commission support the award and the quoted ground (3) has no application. Considera-

tion must then be given to the fourth ground set out in the section although it is not referred to in terms by claimant's brief. Claimant says: "The Industrial Commission erred in ruling that the employee failed to prove that he sustained an abnormal or unusual strain * * *." We take this as an assertion that there was not sufficient competent evidence in the record to warrant the finding of no abnormal strain, or that the finding was clearly contrary to the overwhelming weight of the evidence, (Enyard v. Consolidated Underwriters, Mo.App., 390 S.W.2d 417), and proceed to a consideration of the pertinent evidence.

Asked to illustrate the manner in which he regularly performed his operation of lifting the tub, the claimant demonstrated and at the same time explained:

"You take the tub like this, dump your container into it, put your hand underneath of it and as you come up you got your knee like this and come up and from there you go back and the tub is turned like that, and I was going up and bringing it back on my shoulder and I had a sharp pain in my shoulder in back."

"Q You said you twisted your back?

A As you throw it up on your shoulder you swing and it could go over to the side.

Q What did happen?

A It tipped and went over to the side, and to keep from spilling it you level it and balance it to keep the stuff from spilling out."

The Referee intervened to clarify and record the demonstration with the following questions to which claimant responded:

"THE REFEREE: Now, with regard to the demonstration the employee has been giving, I think the record should reflect the employee has to get down close to the ground, grab one of the handles with his right hand, the handle being near the top of the tub, and lift this tub

---

* Grounds 1 and 2, set out in this section, are not here relevant.

up so his left hand was under the right —near the middle of the tub?

A   Yes, sir.

THE REFEREE: And then you swing the tub up that way until the top is about shoulder level, and at this point you felt pain in your back?

A   Yes, sir.

THE REFEREE: And then you pull it up over your left shoulder and at that time your back makes a slight turn to the left; correct?

A   Yes, sir.

THE REFEREE: And in the meantime you are trying to balance that tub in such a way your left hand is more or less in the middle of the tub on the handle, and your left hand is under the middle of the tub on the bottom.  Looks to me it would be pretty easy to get something like that off balance.

A   Yes, sir.

THE REFEREE: In addition to heavy, it is pretty difficult to balance it?

A   Yes, sir.

THE REFEREE: That is obvious from seeing this demonstration."

Claimant then testified:

"Q (Mr. Nichols)  Do you recall if you slipped or tripped when you did this?

A   I don't recall, sir.

Q   Did you spill anything out of the tub?

A   Yes, sir, a little bit.

Q   Which way did it spill?

A   Away from me.

Q   How much spilled?

A   I would say about a gallon.

Q   Why did you spill it?

A   Because the solution was a white solution of slop and garbage and it was over-balanced as I got it toward my shoulder and it spilled over the edge of it, and you have to keep from doing that or you get complaints from City Hall."

Upon cross-examination claimant testified:

"Q  (Mr. Schwarz)  Now, this work you do day in and day out you told us entails taking this trash tub, Exhibit A, filling it with garbage and picking it up as you demonstrated, and you go down to the knee, get it on one knee, shift the weight to the hand, raise it up and shift it to your shoulder?

A   Yes, sir.

Q   And day in and day out, and in doing work you did, there is some tilting of that tub and shifting of that tub?

A   Yes, sir.

Q   That is the normal and usual way?

A   Yes, sir.

Q   And there is always a little shifting in the weight, isn't there?

A   Well, I don't know how to explain it.  You have got to keep it from spilling out and it's got to be kept flat, and that was water, and if you get it on the yard or something you get a complaint from City Hall, and so many lose their contracts, and that's what they themselves tell you, and if you do that they get mad at you.

Q   But in just doing what you described, you start out and you tilt the tub on edge when you go to lift it up, you tilt it then, don't you?

A   It is not tilted unless it would be full, because you balance it on the center of your hand.

Q   But when you first go and put it on your knee you have to raise it to this level to get it on there?

A   I don't have any like that.

Q But you have to squat and tilt the tub to get it on that knee, don't you?

A Yes, sir.

Q And then again when you shift it from the knee to the hand you have some tilting and motion in that tub?

A Yes, sir.

Q And then when it is shifted from the hand to the shoulder at a higher level you get some motion, don't you?

A You are not supposed to have.

Q And when you swing it on your shoulder you also get some motion in that tub itself, don't you?

A. Yes, sir.

\* \* \* \* \* \*

Q One hundred and twenty pounds would not be unusual to lift weights in the garbage hauling business, would it, that amount of weight?

A No.

\* \* \* \* \* \*

Q And when you got this pain you were doing the same thing you do day in and day out?

A Yes, sir.

Q Actually, really the only different thing in this case is when you did it this time you get a pain in your back; isn't that about right?

A Yes, sir."

■ The finding of no abnormal strain was another way of saying that the strain, if any, in the course of claimant's operation was a normal strain. Consideration must then be given to the question of whether there was sufficient competent evidence from which to find that claimant's exertions constituted only a normal strain. No doubt there was straining of muscles, legs, arms and back in lifting the tub. But straining was part of the job. From the claimant's own testimony the Commission could reasonably find that the type of work undertaken necessarily involved straining every time a tub was lifted and that the degree of strain varied according to the weight lifted and that that weight could vary according to the kind of material placed in the tub. Hence it could well be said that variation in content was a normal characteristic of the job, as was variation in weight. Likewise it could reasonably be found from the evidence that shifting or moving of the contents of the tub in the course of elevating the tub was a normal consequence of the operation which claimant undertook, just as was the shifting of the pork loins in Baker v. Krey Packing Co., Mo.App., 398 S.W.2d 185. Nothing is seen in the actual maneuvers of the claimant upon the occasion in question which constituted a departure from his wonted method of accumulating and transporting the garbage.

From such a record it must be found that there was sufficient competent evidence from which the Commission could reasonably conclude that the claimant sustained no abnormal strain. There is no overwhelming evidence to the contrary. The legal conclusion that he did not suffer an accident within the meaning of the Workmen's Compensation Law must be approved.

The judgment of the Circuit Court should be reversed and the cause remanded with directions to enter a new judgment affirming the final award of the Industrial Commission.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is reversed and cause remanded with directions to enter a new judgment affirming the final award of the Industrial Commission.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.